IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


CHARLES DICKERSON                                                    PLAINTIFF

VS.                                        CIVIL ACTION NO.  2:06CV88KS-MTP

JONES COUNTY, MISSISSIPPI                                           DEFENDANT


## MEMORANDUM OPINION AND ORDER

This cause is before the court on defendant Jones County, Mississippi's motion for summary judgment.  From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court finds that the motion for summary judgment is well taken and should be granted.  The court specifically finds as follows:

## FACTUAL BACKGROUND

In August 2005, plaintiff Charles Dickerson was employed with defendant as a Crew Leader for the Road and Bridge Department.  He had been hired in 1998 as a pothole patcher. Plaintiff's job responsibilities as Crew Leader included supervising an assigned crew and participating in its work with roadside maintenance and clearing, and rubbish pick up and disposal.  On Monday, August 29, 2005, Jones County, Mississippi was hit by Hurricane Katrina. Three days before Hurricane Katrina struck Mississippi (Friday, August 26), plaintiff's supervisor Barry Saul had decided - and had instructed his employees - that all Beat 3 road employees were to stay home from work on Monday, August 29 and were to report to work on Tuesday, August 30 in order to begin the anticipated clean-up that would be necessary following

1

the storm.  Plaintiff left work early on Friday, August 26 in order to go to the doctor and claims that prior to his leaving, he was not informed of when to return to work.  Plaintiff received a note from his doctor during that visit excusing him from work until September 6, 2005.

On Sunday, August 28, the day before the hurricane struck, plaintiff went to stay at his daughter's house in Gitano, Mississippi to wait out the storm.  Because of the hurricane, several trees had fallen at his daughter's home and on the nearby roads, and any land or cell phone lines plaintiff had access to were out of service, which prevented plaintiff from calling or returning to work.  Plaintiff did not report to work on August 30, August 31, or September 1, 2005.  Plaintiff first reported to work on Friday September 2, 2005 around noon - four days after the storm.  When plaintiff returned to work, he tried to explain why he had not been able to return to work and to provide his doctor's excuse to Mr. Saul.[1]  Mr. Saul told plaintiff that he was mad because he did not call in, and that he should go take a few days off from work.  Plaintiff returned to work the following Tuesday (Monday was a holiday).  This time, Mr. Saul instructed plaintiff to take two weeks off, and informed him that he would come talk to him.

Mr. Saul and plaintiff did not speak again.  By letter dated September 9, 2005, plaintiff was informed by attorneys for the Jones County Board of Supervisors, on behalf of Mr. Saul, that he had been discharged from employment for failure to report to work during a time when his employment was necessary for the public welfare of the county because of the hurricane disaster.  At the time of his termination, plaintiff was seventy years old.

Plaintiff appealed his dismissal to the Personnel Grievance Committee, who found in a

---

[1] Mr. Saul testified that the first time he saw the doctor's excuse was the following Tuesday.

report dated September 29, 2005 that the allegations resulting in plaintiff's dismissal were sufficient reasons for dismissal and that the personnel policies and procedures for Jones County were followed.  Plaintiff then appealed the finding of the Grievance Committee, and a hearing was then held before the full Board of Supervisors on October 19, 2005.  The Board found that plaintiff's failure to appear and report to work violated Rule V(a)(13) of the Jones County, Mississippi Personnel Policies and Procedures;[2] that plaintiff could have contacted Mr. Saul or any other supervisor and had the ability to appear and report for work from August 29, 2005 until September 2, 2005; that plaintiff's beat, Beat 3, is responsible for opening public roads blocked as a result of natural disasters including hurricanes; and that there was no testimony to support plaintiff's contention of age discrimination.  Accordingly, the Board upheld the termination of plaintiff's employment.

Only one other employee in Beat 3 failed to report on work on Tuesday, August 30, 2005.  That employee was Charles Legg, who was 65 years old at the time.  Mr. Legg lived approximately 30 miles out of town.  Although Mr. Legg did not report to work on August 30, he did report the following day, Wednesday, August 31[3]- two days before plaintiff reported.  Mr. Legg testified that neither Mr. Saul nor Keith Gatlin, the road foreman, nor anyone else working for Jones County, asked him why it took him so long to return to work.  Mr. Legg was not terminated or disciplined in any manner.

Plaintiff filed a charge with the EEOC on November 2, 2005.  On November 30, 2005,

---

[2] Rule V(a)(13) prohibits "[a]bsence without leave, including failure to report for employment unless for reasonable cause."

[3] Plaintiff testified that Mr. Legg returned Wednesday evening, while Mr. Saul and Mr. Legg testified that he returned early Wednesday morning.

the EEOC issued plaintiff a right to sue letter.  On February 28, 2006, plaintiff commenced this

action in Circuit Court in Jones County, Mississippi, pursuant to the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Plaintiff alleges that he was terminated

from his position due to his age.  The case was removed to this court based on federal question

jurisdiction on March 31, 2006.  On January 10, 2007, defendant moved for summary judgment.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be

granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."   The party seeking summary

judgment bears the initial burden of informing the court of the basis for its motion and

identifying those portions of the record which it believes demonstrates the absence of a genuine

issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.

1988).  The moving party, however, need not negate the elements of the non-movant's case.  *See

Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*,

37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving

party to show with "'significant probative' evidence" that a genuine issue of material fact

actually exists.  *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994) (citation omitted).  To

overcome summary judgment, the non-movant may not rest on the pleadings, but must identify

specific evidence in the ... record demonstrating that there is a material fact issue concerning the

essential elements of its case." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257. "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1996) (citation omitted). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence...will be insufficient" to defeat a properly supported motion for summary judgment.). "[C]onclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). The non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. *Anderson*, 477 U.S. at 255. The district court, therefore, "must not resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (internal citation omitted). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647, 651 (5th Cir.

5

1962).  By contrast, summary judgment for the moving party is only proper when a rational factfinder, looking at the record as a whole, could not find for the nonmoving party.  *Matsushita*, 475 U.S. at 587.

"The mere existence of a disputed factual issue...does not foreclose summary judgment. The dispute must be genuine, and the facts must be material."  *Prof'l Mgrs., Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "With regard to 'materiality,' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  Factual disputes that are irrelevant or that are unnecessary will not be counted."  *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987) (citation omitted).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiffs' cause of action does not exist as a matter of law,...all other contested issues of fact are rendered immaterial."  *Topalian v. Ehrmanl*, 954 F.2d 1125, 1138 (5th Cir. 1992), *reh'g denied*, 961 F.2d 215 (5th Cir. 1992).

Finally, the Fifth Circuit admonishes that "[w]hen dealing with employment discrimination cases, which usually necessarily involve examining motive and intent, ... granting of summary judgment is especially questionable.  In these cases 'summary judgment should be used cautiously and all procedural requirements given strict adherence....' "  *Hayden v. First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979) (*quoting Lavin v. Illinois High School Ass'n*, 527 F.2d 58, 61 (7th Cir. 1975)); *see also Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) (Motivation and intent often are proved only "through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder.").

6

ANALYSIS

Under the ADEA, it is unlawful for an employer "to discharge any individual...because of such individual's age."[4]  29 U.S.C. § 623.  Plaintiff may prove his employment discrimination claim by either direct or circumstantial evidence.  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (abrogated on other grounds).  Direct evidence of discrimination is that which proves discriminatory animus without the need for inference or presumption.  *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993), *reh'g denied*, 995 F.2d 225 (5th Cir. 1993); *see also EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).  Direct evidence of discrimination may include statements made by the employer which prove a discriminatory motive on their face.  *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415-16 (5th Cir. 2003); *Jones v. Overnight Transp. Co.*, 2006 WL 3627148, at * 2 (5th Cir. Dec. 13, 2006).  In order for comments in the workplace to constitute direct evidence of discrimination, they must be: 1) related to the protected class of persons of which plaintiff is a member; 2) proximate in time to the challenged employment action; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.  *Krystek v. Univ. of S. Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999) (*citing Brown v. CSI Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).

Plaintiff states that on January 5, 2004 Mr. Saul asked plaintiff how much longer he was going to work and when he was going to retire, and then told plaintiff "I'll take care of you."[5]

---

[4]  The ADEA's prohibitions apply only to individuals at least forty years of age.  29 U.S.C. § 631(a).

[5]  This statement was initially denied in defendant's response to the EEOC charge, but Mr. Saul admitted making it to the Board of Supervisors during plaintiff's appeal.  Mr. Saul

Plaintiff also states that Mr. Saul made remarks about wishing the old men would retire, and that if they did the other workers could get raises.  Plaintiff offers these statements as direct evidence of discrimination.  The court does not agree, however, that these comments are direct evidence of discrimination.  First, the question about retirement is too remote in time from the employment decision at issue, as it was asked more than a year and a half before plaintiff's termination.  Moreover, none of the comments are directly related to the  employment decision at issue and they require the factfinder to draw additional inferences.  *See*, *e.g.*, *Machinchick v. PB Power, Inc.* 398 F.3d 345, 352-54 (5th Cir. 2005) (analyzing as circumstantial evidence email discussing employer's intent to hire younger employees, employer's indirect references to plaintiff's age, and employer's inquiry about when employee was planning to retire); *Mooney*, 54 F.3d at 1218-19 (holding that statements made by plaintiff's supervisors that they wanted to encourage certain older employees (not plaintiff) to retire early or to dismiss them, that they wanted to replace plaintiff with a "younger and cheaper" employee, that the reason for plaintiff being discharged "must have been [his] age", and that defendant was "going to get rid of the older employees with the higher salaries" not direct evidence of discrimination); *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999) (holding that job interviewer's statement that plaintiff's age caused him "concern" was not direct evidence of age discrimination in employer's decision not to hire plaintiff).

    In the absence of direct evidence, in order to establish a claim under the ADEA for employment discrimination, a "modified *McDonnell-Douglas* approach applies."  *Machinchick*, 398 F.3d at 352 (citations omitted).  Under that framework, plaintiff must first establish a prima

---

explained that he was merely "picking" at plaintiff.

facie case by proving that: 1) he was discharged; 2) he was qualified for his position; 3) he is

within the protected class; and 4) he was either replaced with someone outside the protected

class, replaced by someone younger, or otherwise discharged because of his age.  *McDonnell-*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Machinchick*, 398 F.3d at 352; *Price v. Marathon*

*Cheese Corp.*, 119 F.3d 330, 336-37 (5th Cir. 1997) (citations omitted).

  The only element of the prima facie case the parties dispute is the fourth element.

Plaintiff points to the fact that Mr. Legg also did not show up for work after Hurricane Katrina

and was not discharged as evidence of discrimination.  However, Mr. Legg is only five years

younger than plaintiff.  In *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-13,

**the Supreme Court explained that a "prima facie case requires evidence adequate to create**

**an inference that an employment decision was based on an illegal discriminatory criterion.**

**In the age-discrimination context, such an inference cannot be drawn from the replacement**

**of one worker with another worker insignificantly younger." (internal quotations,**

**alterations, and citation omitted).  Numerous courts interpreting *O'Connor* have held age**

**differences of seven years or less are not significant enough to make out the fourth prong of**

**the plaintiff's prima facie case.  *See*, *e.g.*, *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336**

**(6th Cir. 2003), *cert. denied*, 541 U.S. 1010 (2004) (six years not significant, in the absence of**

**direct evidence of discrimination); *Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000)**

**("three year age difference is too insignificant to support a prima facie case of age**

**discrimination."); *Hartley v. Wisc. Bell*, 124 F.3d 887, 892 (7th Cir. 1997) (age difference of**

**six or seven years "presumptively insubstantial"); *Schiltz v. Burlington N. R. R.*, 115 F.3d**

**1407, 1413 (8th Cir. 1997) (5 year age difference not "substantial" and does not raise**

inference of discrimination).

Even if the age difference between Mr. Legg and plaintiff were substantial, Mr. Legg would not be a proper comparator for plaintiff, as it is well established that employees who engaged in different violations of company policy are not similarly situated for the purposes of an employment discrimination claim. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990). Indeed, in order to make a case for discriminatory discharge, the misconduct for which plaintiff was discharged must be "nearly identical" to that of an employee outside of his protected class who was not discharged. *Okoye*, 245 F.3d at 514; *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000), *reh'g & suggestion for rehearing en banc denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *see also Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges."). Plaintiff cannot make this showing, as he was out of work for a full two days more than Mr. Legg, in the immediate aftermath of a hurricane - a time when their services were needed the most.

Plaintiff has an alternative basis for establishing the fourth prong of his prima facie case, however. Although he does not allege in his complaint that he was replaced by someone outside his protected class, plaintiff testified in his deposition that following his discharge, David Creel (in his late 40's), Don Heigler (in his 40's) and Mr. Croxton, described as being "way younger" than plaintiff, were hired to Beat III. Defendant does

10

not dispute this.  As these individuals are all younger than plaintiff, this is sufficient to establish a prima facie case of age discrimination.  Moreover, although the remarks by Mr. Saul discussed above do not constitute direct evidence of discrimination, they are sufficient - coupled with plaintiff's termination and replacement by younger employees - to support an inference of discrimination.  *See Machinchick*, 398 F.3d at 352-54 (email discussing employer's intent to hire younger employees, employer's indirect references to plaintiff's age, and employer's inquiry about when terminated employee was planning on retiring, coupled with employee's termination and replacement by younger employee, sufficient to create inference of discrimination).

Accordingly, as plaintiff established a prima facie case, defendant must articulate a legitimate, non-discriminatory reason for its decision to discharge plaintiff.  *Machinchick*, 398 F.3d at 352; *Price*, 119 F.3d at 337.  Defendant's proffered reason for terminating plaintiff was for being absent in violation of Rule V(a)(13) of the Jones County, Mississippi Personnel Policies and Procedures, which is absence without leave, including failure to report for employment unless for reasonable cause.   In response, plaintiff argues that he could not leave his daughter's house because the roadways were inaccessible.  Plaintiff also argues that his doctor had excused him from work until September 6, 2005, as set forth in the doctor's note he presented to Mr. Saul after he returned to work.   The court, however, finds that defendant's proffered reason for terminating plaintiff was legitimate under the circumstances.  Plaintiff's duties included overseeing the work involved in road maintenance, clearance of roads and removal of debris and rubbish, and that following a major storm like Hurricane Katrina, plaintiff and his crew were expected to be first

11

responders.  Plaintiff did not call in to work nor report to work the day after the storm.

The next day, Wednesday, Max Davis, a Jones County Sheriff's Deputy who lived down the

street from where plaintiff was staying during the storm, told Mr. Saul that the roadway

was passable.  However, plaintiff did not report to work until Friday, the fourth day after

the storm.  All the other Beat III employees showed up to work the day after the storm,

except for Mr. Legg who showed up the following day (a full two days before plaintiff).

Since the defendant has offered a legitimate, non-discriminatory reason for

plaintiff's termination, the presumption of discrimination faces and plaintiff must prove by

a preponderance of the evidence that defendant intentionally discriminated against him.

*Machinchick*, 398 F.3d at 352.  Plaintiff can accomplish this either by proving that the

proffered reason is a pretext for discrimination, or that the defendant's reason, although

true, is only one of the reasons for its conduct, and that plaintiff's age was a motivating

factor.  *Id.*

To establish pretext, plaintiff cannot merely rely on his subjective belief that

discrimination has occurred.  *Price*, 119 F.3d at 337.  And plaintiff must do more than

simply cast doubt on defendant's legitimate non-discriminatory reason; plaintiff "must

show that a reasonable factfinder could conclude that [the employer's] reason[ ] [is]

unworthy of credence.  *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815-16 (5th Cir. 1993), *reh'g*

*denied*, 993 F.2d 1545 (5th Cir. 1993), *cert. denied*, 510 U.S. 976 (1993) (brackets in original)

(citation omitted).  "There must be some proof that age motivated the employer's action,

otherwise the law has been converted from one preventing discrimination because of age to

one ensuring dismissals only for just cause to all people over 40."  *Id.* at 816 (citations

omitted).

Plaintiff points to the statements made by Mr. Saul as evidence of pretext. However, as noted above, the question about plaintiff's retirement plans was asked more than a year and a half before plaintiff's termination. Moreover, the Fifth Circuit has held that a question regarding an individual's retirement plans is not evidence of discriminatory intent demonstrating pretext. *Moore*, 990 F.2d at 818  (questions posed by employee's incoming supervisor to outgoing supervisor concerning ages of current employees and whether any of older employees planned to retire soon, without more, not evidence of pretext). As for the remark allegedly made by Mr. Saul that he wished the old men would retire, and that if they did the other workers could get raises, the court finds that this is not sufficient evidence of pretext, particularly in light of the fact that other employees near plaintiff's age - Jimmy Crotwell (approximately 68 years old) and plaintiff's own brother-in-law, Cecil Wiggington (approximately 66 years old) - remained on the crew under Mr. Saul's supervision after Hurricane Katrina and that during his three year tenure in his position as Supervisor of Beat III, Mr. Saul has hired and retained multiple individuals in their sixties or older. Plaintiff also points to the fact that Mr. Legg was not terminated as evidence of pretext but, as discussed earlier, Mr. Legg is only five years younger than plaintiff which strongly negates any inference of discrimination or pretext.

The decision to terminate plaintiff may not have been fair from plaintiff's perspective, but that does not make it discriminatory. It is important to keep in mind that "the ADEA does not restrict an employer's authority to discharge an employee for no reason, for a good reason or even for a wrong reason." *Walker v. S. Holdings, Inc.*, 934

13

F.Supp. 197, 199 (M.D. La. 1996) (citation omitted).  Indeed, the ADEA "prohibits only employment decisions based upon age.  Thus, the issue here is not whether the employer was justified in discharging plaintiff but whether plaintiff's age was a motivating factor in that decision."  *Id.*  The court finds that plaintiff has failed to meet his burden of producing sufficient evidence to create a genuine issue of material fact that defendant's legitimate, non-discriminatory reason for terminating him was merely a pretext for discrimination.  Nor has plaintiff presented sufficient evidence to allow a reasonable jury to find that his age was a motivating factor in defendant's decision to terminate him.  Accordingly, defendant is entitled to summary judgment.

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions, if any, are dismissed as moot.

SO ORDERED and ADJUDGED on this, the 9th day of March, 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

14